UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA DUAH,
    *Petitioner*,

v.

DAREK PUZIO,
    *Respondent.*

No. 3:24-cv-01616 (VAB)

**RULING AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Erica Duah's petition for writ of habeas corpus.

For the following reasons, the petition for writ of habeas corpus is **DENIED**.

I. **BACKGROUND**

Ms. Duah. a federal prisoner, is serving a 40-month sentence at FCI Danbury. Resp't Ex. 3, ECF No. 7-3 ¶¶ 5–6; Fed. Bureau of Prisons ("BOP"), *Inmate Locator Service*, BOP Registration No. 25470-510, https://www.bop.gov/inmateloc/ (last visited February 6, 2025).[1] Her projected release date, after good conduct credits are applied, is October 2, 2026. *Id.* ¶ 7.

Ms. Duah has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 alleging that (1) BOP has miscalculated sentence credits she has earned under the First Step Act and that (2) BOP has not placed her in a Residential Reentry Center ("RRC") or home confinement, as required by law. *See* Pet., ECF No. 1 at 6.

II. **STANDARD OF REVIEW**

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas

---

[1] The Court may take judicial notice of BOP's inmate locator website. *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).

corpus under § 2241 is available to a federal prisoner who does not challenge the legality of h[er] sentence, but challenges instead its execution subsequent to h[er] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, habeas petitioners may seek relief under § 2241 "to challenge 'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *McPherson v. Lamont*, 457 F. Supp. 3d 67, 74 (D. Conn. 2020) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), and collecting other Second Circuit cases).

The petitioner "bears the burden of proving that [s]he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy h[er] burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III.     DISCUSSION

The Court will address Ms. Duah's two arguments that BOP has miscalculated sentence credits under the First Step Act and not placed her in a Residential Reentry Center ("RRC") or home confinement, in turn

### A. The Calculation of Sentence Credits

On December 21, 2018, Congress enacted the First Step Act, which was intended to encourage federal prisoners to complete evidence-based recidivism reduction programs ("EBPRs") and other productive activities ("PAs"). Prisoners may receive "Earned Time Credits" ("ETCs") after successfully completing these programs. 18 U.S.C. § 3632(d)(4)(A) (stating that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction

programming or productive activities, shall earn time credits . . .".). ETCs qualify prisoners for early release from custody. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A).

Application of ETCs may also enable a prisoner to be transferred sooner to prerelease custody, be it in a residential reentry center, on home confinement, or on supervised release. *See* 18 U.S.C. § 3624(g). Prisoners classified as minimum or low risk of recidivism are eligible to earn either 10 or 15 days of credit for every 30 days of successful participation in EBPRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A)(i), (ii).

In addition to specifying when prisoners can earn ETCs, the First Step Act considers situations where a prisoner is eligible to earn ETCs but cannot have those credits applied to reduce his or her sentence. For example, prisoners must have shown a demonstrated risk reduction or be maintaining a minimum/low risk of recidivism to have their ETCs applied. *See* 18 U.S.C. § 3624(g)(1)(B). And although a prisoner may be accumulating ETCs each month, the prisoner is only "eligible" to have those credits applied to her sentence when she has "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). This second consideration is especially relevant here.

The Court liberally construes the petition as first alleging that BOP has not properly calculated Ms. Duah's sentence credits. *See* ECF No. 1 at 6 (stating that "[m]y ETC[ ]s are not being calculated properly based on my term of incarceration[,] and I'm requesting my full projected ETC[ ]s applied to my sentence based on the First Step Act."). These allegations fall within the categories of challenges that may be brought under § 2241. *See Jiminian*, 245 at 146 (listing "computation of a prisoner's sentence by prison officials" as permissible grounds for a § 2241 petition).

Ms. Duah began her 40-month term of imprisonment on December 1, 2023. Resp't Ex. 3(A), ECF No. 7-3 at 6. After statutory good conduct credits are applied under 18 U.S.C. § 3624(b)(1), Ms. Duah's release date is October 2, 2026. *Id.* at 6. That release date, however, may be shortened if Ms. Duah earns FTCs. As of November 4, 2024 (the date of the Sentence Monitoring Computation Data appended to Respondent's response), Ms. Duah had earned 135 days of FTC credit. *Id.* Thus, Ms. Duah's projected release date will be May 20, 2026, if 135 FTC credits are applied. *Id.* Indeed, approximately three months after BOP generated Ms. Duah's Sentence Monitoring Computation Data, the BOP website now lists Ms. Duah's projected release date as April 20, 2026. *See Inmate Locator*, *supra*. Ms. Duah's projected release date advanced by one month because she has earned approximately 30 FTC credits in the past 90 days. *See* 18 U.S.C. § 3632(d)(4)(A)(i) (stating that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."). Ms. Duah's release date will continue to advance as she continues to earn ETCs while incarcerated.

Ms. Duah does not maintain that she has not received credit for programming she completed. Rather, she appears to maintain that BOP is not applying the ETCs she has earned to her sentence.[2] *See* ECF No. 1 at 6.

The Court disagrees.

While a prisoner may accumulate ETCs each month, she is "only 'eligible' to have those credits applied to [her] sentence when [s]he has 'earned time credits under the risk and needs

---

[2] To the extent Ms. Duah argues she should receive credit for ETCs she has yet to earn, *see* ECF No. 1 at 6 ("requesting [her] full *projected* FTC[ ]s [be] applied to [her] sentence . . ." (emphasis added)), this is contrary to statute. *See* 18 U.S.C. § 3632(d)(4)(A) (stating that "[a] prisoner . . . who successfully *completes* evidence-based recidivism reduction programming or productive activities, shall earn time credits . . ." (emphasis added)). *See also Fall v. Stover*, No. 3:24-CV-1176 (OAW), 2024 WL 4564605, at *2 (D. Conn. Oct. 24, 2024) (citing § 3632(d)(4)(A) to conclude that "future or incomplete programming does not generate FSA credit[.]").

4

assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *Clark v. Jamison*, No. 3:23-CV-455 (MPS), 2023 WL 7300582, at *3 (D. Conn. Nov. 6, 2023) (quoting 18 U.S.C. § 3624(g)(1)(A)) (rejecting the same argument under analogous facts). Thus, a prisoner's ETCs, regardless of when they are earned, are only "applied" as the prisoner approaches her projected release date (after statutory good conduct credits are applied). As a result, BOP will only apply Ms. Duah's ETCs when the number of ETCs she has earned equals the number of days remaining before October 2, 2026. ECF No. 8-1 at 2.

As Ms. Duah continues to earn credits, her release date will continue to advance, unless she loses any ETCs. ETCs, like good conduct credit, may be lost. *See* 28 C.F.R. § 523.43 (entitled "Loss of FSA Time Credits"); 28 C.F.R. § 541.3 (loss of FSA Time Credits is an available sanction for prohibited acts). Because ETCs may be lost or gained throughout a prisoner's term of imprisonment, section 3624(g)(1)(A) does not permit BOP to reduce a prisoner's sentence, until the number of ETCs is "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Only then can ETCs be applied because they "would no longer be subject to loss for future prohibited acts." *Clark*, *supra*, at *3.

According to BOP records, on November 6, 2025, the number of ETC credits that Ms. Duah is expected to earn will equal the amount of time Ms. Duah has remaining on her sentence. *See* Resp't Ex. 3(B), ECF No. 7-3 at 10 (showing an "FSA Conditional Release Date [of] 11-06-2025"). At that time, and only at that time, BOP will apply Ms. Duah's ETC credits under § 3624(g)(1)(A). As a result, any claim of miscalculation or misapplication of ETC credits now – before November 6, 2025 – is premature.

Accordingly, Ms. Duah's petition for habeas corpus on these grounds will be denied.

**B. The Placement in an RRC or Home Confinement**

District courts within the Second Circuit have uniformly held that decisions regarding pre-release custody rest within the discretion of the BOP and that they lack authority to order a transfer to pre-release custody at an RRC or on home confinement. *See, e.g., Bortner v. Stover*, No. 3:24-CV-281(VAB), 2024 WL 3595922, at *3 (D. Conn. July 31, 2024) (denying petition on ground that the court lacks authority under the Second Chance Act to order petitioner transferred to home confinement and citing cases holding that the Second Chance Act, First Step Act, and CARES Act do not remove transfer decisions from sole BOP discretion); *see also, e.g., Rivera-Perez v. Stover*, No. 3:23-CV-1348(SRU), 2024 WL 4819250, at *9 (D. Conn. Nov. 18, 2024) ("BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another"; denying request for transfer from RRC to home confinement (quoting *Milchin v. Warden*, No. 2:22-cv-195(KAD), 2022 WL 1658836, at *2 (D. Conn. May 25, 2022) (internal quotation marks omitted))); *Fournier v. Zickefoose*, 620 F. Supp. 3d 313, 318 (D. Conn. 2009) (noting that "the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed in an RRC." (internal quotation marks omitted)).

The Court construes Ms. Duah's petition as alleging that BOP is not allowing her release to an RRC or home confinement. *See* ECF No. 1 at 6 (requesting the Court to "enforce the implementation of [the First Step Act and Second Chance Act] and grant the Petitioner the right to seek RRC/HC and continue earning ETC credits until [her] sentence is completed"). These allegations also fall within the categories of challenges that may be brought under § 2241. *See Jiminian*, 245 at 146 (listing the "type of detention" as permissible grounds for a § 2241 petition).

But, consistent with the caselaw above, the Court lacks authority to order Ms. Duah's transfer to an RRC or home confinement.

Accordingly, Ms. Duah's petition for habeas corpus on these grounds will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Ms. Duah's petition for writ of habeas corpus is **DENIED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 13th day of June, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE